UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMARA LOVE,<br><br>               Plaintiff,<br><br>   v.<br><br>KAISER PERMANENTE, et al.,<br><br>               Defendants. | CASE NO. 2:23-cv-00421-LK<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND |

      This matter comes before the Court on Plaintiff Tamara Love's motion to file a third amended complaint, Dkt. No. 37, and Defendant Kaiser Foundation Health Plan of Washington's ("Kaiser") motion to dismiss her second amended complaint, Dkt. No. 38.[1] For the reasons set forth below, the Court denies Ms. Love's motion to amend and grants Kaiser's motion to dismiss.

---

[1] Ms. Love has named as Defendants "Kaiser Permanete" and Kaiser Foundation Health Plan of Washington. Dkt. No. 33 at 1. Kaiser avers that Kaiser Foundation Health Plan of Washington is the only proper Defendant. Dkt. No. 38 at 5 n.2.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 1

# I.  BACKGROUND

Ms. Love was hired by Defendant Kaiser in 2021 and worked for the Medicare Member Service Department handling calls from Medicare recipients. Dkt. No. 33 at 7. She worked remotely for most of her employment with Kaiser. *Id.*

## A.  Ms. Love Was Discharged After a Contentious Call

In June 2022, Ms. Love started receiving calls from members that she felt were threatening and she sent a "notice to Security through Outlook." *Id.* at 8. In one such call, the member's representative "called in seeking a refund of a premium over payment from a member[']s account. He started screaming that the bank was not able t[o] stop the transfers and was told to call insurance." *Id.* Ms. Love was unsure whether she "was authorized to relinquish a member's property per HIPPA and SPOT guidelines," the caller was not able to verify the account, and Ms. Love was unable to respond to the caller's questions. *Id.* She "reached out to [her] supervisor in an attempt to refocus and de-escalate the call," but her supervisor did not assist and later informed Ms. Love that she "mistreated the member's husband by not letting him have ac[c]ess to her account." *Id.* Ms. Love was told that she "should have given money to a representative based on 'their' sexual status to [the] member." *Id.* Kaiser terminated Ms. Love's employment on June 28, 2022 because her treatment of the caller did not meet Kaiser's standards. *Id.* at 8–9; *see also* Dkt. No. 21 at 19–21.[2]

Ms. Love also notes that before she was let go, she took June 24 and 27, 2022 off from work because she was sick. Dkt. No. 33 at 9. On June 28, 2022, she was told to return her work computer. *Id.* She responded that she was sick and Kaiser would either need to pick it up or wait.

---

[2] The Court's prior order considered Ms. Love's termination letter because it was incorporated by reference into the complaint. Dkt. No. 32 at 5. The Court considers the letter again because it is incorporated by reference into the second amended complaint. *See, e.g.*, Dkt. No. 33 at 7–8 (referencing Ms. Love's termination letter).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 2

*Id.* Her supervisor "became hostile," refused to pick up the computer, and demanded that Ms. Love return it, which Ms. Love did on July 11, 2022. *Id.*

**B.    Ms. Love Filed Suit Alleging Discrimination and Harassment**

Ms. Love filed suit against Kaiser on March 19, 2023. Dkt. No. 1. On October 12, 2023, the Court granted Kaiser's motion to dismiss her complaint for failure to state a claim, denied Ms. Love's motion for summary judgment, and granted Ms. Love leave to file an amended complaint. Dkt. No. 32 at 13. On October 24, 2023, Ms. Love filed a timely second amended complaint, which is the current operative pleading. Dkt. No. 33.[3]

Ms. Love asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; and an unspecified provision of the California Civil Code. Dkt. No. 33 at 3. She alleges that Kaiser "violated [her] rights under federal and state law by denying [her] breaks, . . . disrupting the working environment with sexually motivated conduct[,]" failing to assist her "with abusive and racially abusive phone calls[,] . . . using sexual situations [as] a determin[]ing factor for monetary compensation[,] . . . using gender and or race as a determination of care[,]" and "brutally" firing her after she requested time off for an illness. *Id.* at 7. She contends that Kaiser's standards of conduct—cited in her termination letter—"belie[d] what [she] was hired to do" and "showed that [her] manager actively discrimi[n]ated aga[in]st [her] and the Medicare members." *Id.* at 9. She also avers that Kaiser "did not offer accommodation" and "refused to send boxes" to facilitate the return of her computer equipment. *Id.*

---

[3] Ms. Love previously filed a document she titled as her "amended complaint," Dkt. No. 24, which the Court construed as a motion to amend and denied, Dkt. No. 25. Ms. Love docketed her current amended complaint as her "Second Amended Complaint," Dkt. No. 33, and Kaiser's motion to dismiss also refers to the pleading that way, Dkt. No. 38 at 5.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 3

Ms. Love also states that she received letters from Kaiser physician Dr. John Dunn in December 2021 and June 2022 reminding her to call her provider for a cervical cancer screening. *Id.* She "was not offered a[n] annual physical or wellness exam. But a cervical cancer screening." *Id.* Ms. Love contends that the mailings were "assumptive and discrim[in]atory" because she is homeopathic. *Id.*

Finally, Ms. Love contends that Kaiser "mock[ed her] rights, [h]arrass[ed her,] and abuse[d] the system to control and manipulate on May 4, 2023 in an Administrative Hearing" on her application for unemployment benefits. *Id.* As a result, the Washington Employment Security Department ("ESD") found that she engaged in misconduct, denied her benefits application, and sent her a bill for an overpayment. *Id.* at 9–11.[4] She is seeking $30,000 in lost wages, $10 million in punitive or exemplary damages, and other damages. Dkt. No. 33 at 11–12.

C.     **Ms. Love Seeks Leave to Amend Her Complaint Again**

On November 21, 2023, Ms. Love filed a motion to amend her complaint again to add ESD as a defendant. *See generally* Dkt. No. 37; Dkt. No. 37-1 at 1 (proposed third amended complaint). In her proposed amended pleading, she contends that "[t]he commissioner just by name was presumably a white male of [H]isp[a]nic orig[i]n," ESD sent her numerous pages "in other languages . . . attached to the overpayment request for money for an English speaking citizen," and the Commissioner "upheld a ruling of Misconduct for an employee offering the similar service." Dkt. No. 37-1 at 10; *see also id.* at 11 (contending that the finding of misconduct "affects [her] abil[i]ty to seek gainful employment and licensing."). She seeks damages, attorney's fees, and court costs against ESD for "[h]arassment during the [a]dministrative hearing." *Id.* at 12.

---

[4] Under state law, a former employee can be disqualified from receiving unemployment compensation benefits due to "misconduct," which is defined to include specified types of conduct. Wash. Rev. Code §§ 50.04.294(1), 50.20.060. Although Ms. Love contends that she was denied benefits due to a finding of misconduct, the paperwork she filed reflects that she was disqualified based on her failure to look for work. Dkt. No. 37-2 at 1; Dkt. No. 42 at 1 (redacted).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 4

In her motion to amend, Ms. Love contends that ESD "engaged in discrimination with it[]s ruling of Misconduct and along with the defendants violated [her] rights to be free from discrimination in a decision that resulted in an overpayment." Dkt. No. 37 at 5. Ms. Love has also filed an appeal of ESD's decision in state court. Dkt. No. 40-6 at 1–22; *Love v. Emp. Sec. Dep't*, No. 23-2-09501-0 (Pierce Cnty. Sup. Ct. 2023).

Ms. Love's proposed third amended complaint also seeks to add that her former supervisor Jamie Coleman "is a middle aged white female," Dkt. No. 37-1 at 7, and to correct a typographical error, *id.* at 10 (changing "couchings" to "coachings").

## II. DISCUSSION

The Court first considers Ms. Love's motion to file a third amended complaint. Because the Court denies that motion, it then considers Kaiser's motion to dismiss Ms. Love's second amended complaint.

### A. The Motion to Amend Is Denied

The court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is 'to be applied with extreme liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). The factors courts use to determine when justice requires amendment are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment," and the "futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Of these factors, the consideration of prejudice to the opposing party carries the greatest weight. *Eminence Cap.*, 316 F.3d at 1052. Courts may deny leave to amend when the proposed amendment would be futile. *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir. 2000).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 5

Kaiser responds that joinder of ESD is procedurally improper because Ms. Love did not bring her motion under Federal Rule of Civil Procedure 20 as required for permissive joinder of parties. Dkt. No. 39 at 1. It further argues that Ms. Love cannot show that ESD is a proper party because it was not her employer, its alleged misconduct does not arise from the same transaction or occurrence as Kaiser's, and it is immune from the claims she brings. *Id.* at 1–2.

Ms. Love's proposed third amended complaint does not state a claim against ESD. She asserts claims under various employment statutes, but does not contend that ESD employed her. Dkt. No. 37-1 at 3. Her notation that ESD is an employer does not allege that it was *her* employer. Dkt. No. 44 at 5. And while she also cites the "California Civil Code," Dkt. No. 37-1 at 3, her proposed third amended complaint includes no contentions under that Code or allegations that ESD—a Washington State agency—is subject to California law.

Nor could those deficiencies be cured by amendment. As Kaiser notes, ESD is immune to suit for its benefits-related decisions and for acts that "are intimately associated with the judicial process." *Labrec v. Emp. Sec. Dep't*, 758 P.2d 501, 502 (Wash. Ct. App. 1988); *see also Ferguson v. Emp. Sec. Dep't*, 13 Wash. App. 2d 1081, 2020 WL 3047533, at *3 (Wash. Ct. App. June 8, 2020) (unpublished) ("[T]he Department's decision denying Ferguson unemployment benefits is a judicial action absolutely immune from civil suit."). Although Ms. Love contends that ESD discriminated against her, that allegation appears to be based solely on her disagreement with ESD's decision that she engaged in disqualifying misconduct and was required to repay the overpayment. Dkt. No. 37-1 at 11. The agency is immune from suit for its benefits-related decisions. *Labrec*, 758 P.2d at 502.[5] Because ESD is immune, the Court need not address joinder.

---

[5] Ms. Love also contends that ESD "mock[ed her] rights, [h]arrass[ed her] and abuse[d] the system to control and manipulate on May 4, 2023 in an Administrative Hearing[.]" Dkt. No. 37-1 at 10. To the extent that she is asserting a claim for her treatment at the hearing apart from ESD's benefits decisions, that claim does not share any common questions of law or fact with her employment-related claims against Kaiser and is not amenable to joinder. Fed. R. Civ. P. 20(a)(2)(B).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 6

For all these reasons, the Court denies Ms. Love leave to add ESD as a defendant. Finally, Ms. Love's proposed new allegations about Ms. Coleman's age, race, and gender, or to correct the typographical error identified above, Dkt. No. 37-1 at 7, 10, are futile for the reasons stated in the next section. Therefore, her motion to amend is denied.

### B. The Motion to Dismiss Is Granted

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Under this standard, the Court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not, however, accept as true legal conclusions or "formulaic recitations of the elements of a cause of action." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Kaiser seeks to dismiss all of Ms. Love's claims without leave to amend. Dkt. No. 38.[6] Ms. Love opposes the motion. Dkt. No. 44.

---

[6] Kaiser's motion states that it "incorporates by reference its first Motion to Dismiss" because Ms. Love "asserts the same facts in her Second Amended Complaint that were insufficient to support her claims in her initial Complaint." *Id.* at 7. Setting aside the fact that Ms. Love's second amended complaint alleges additional facts not alleged in her original complaint, the Court declines to consider Kaiser's prior motion to dismiss because doing so would allow Kaiser to circumvent the length limit in Local Civil Rule 7(e)(3). *See Mooney v. Roller Bearing Co. of Am., Inc.*, No. C20-01030-LK, 2022 WL 1014904, at *10 (W.D. Wash. Apr. 5, 2022) (declining to consider other filings incorporated by reference when doing so would violate the length limit in the Local Civil Rules); *O'Dell v. Conseco Senior Health Ins. Co.*, No. C08-00793-RSL, 2011 WL 13044240, at *1 n.1 (W.D. Wash. Feb. 10, 2011) (disregarding all arguments and supporting evidence that were not made in defendants' opposition to plaintiff's motion).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 7

1. Ms. Love Has Not Stated a Race or Sex Discrimination Claim

Under Title VII, an employment discrimination plaintiff must establish a prima facie case by demonstrating that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for [her] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hittle v. City of Stockton, Cal.*, 76 F.4th 877, 887 (9th Cir. 2023) (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004)). To satisfy the fourth element, the plaintiff "may demonstrate an inference of discrimination through comparison to similarly situated individuals, or any other circumstances surrounding the adverse employment action that give rise to an inference of discrimination." *Id.* (cleaned up); *see also Crowe v. Wormuth*, 74 F.4th 1011, 1035–36 (9th Cir. 2023).

Kaiser asserts that Ms. Love "fails to allege facts sufficient to demonstrate that Kaiser allegedly discarding a request for escalation constituted an adverse employment action." Dkt. No. 38 at 13. But Ms. Love was discharged from her employment, which is an adverse action. *See, e.g.*, *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). And unlike the prior version of her complaint, Ms. Love now identifies her race (Black), satisfying the "protected class" element. Dkt. No. 33 at 7, 11.

Kaiser also argues that Ms. Love's employment was terminated "not because she tried to escalate a call, but because after months of repeated coaching sessions, she treated a member disrespectfully and misrepresented to her supervisor what was said during that conversation with the member." Dkt. No. 38 at 13. However, at the dismissal stage, the Court construes Ms. Love's` version of the facts—not Kaiser's—as true. *Iqbal*, 556 U.S. at 678.

Kaiser next argues that "[b]eyond broadly asserting that she is a member of protected classes, Ms. Love relies solely on argument and conclusory allegations, neither of which are sufficient to advance her claims." Dkt. No. 38 at 9. The Court agrees. Ms. Love appears to assert that although she followed "SPOT resources" during the contentious call and "reached out to [her] supervisor in an attempt to refocus and de-escalate the call," her supervisor, Ms. Coleman, refused to take the call, apparently in derogation of the "spot guidelines." Dkt. No. 33 at 8. Ms. Love claims that Ms. Coleman "disregarded the request for escalation because [Ms. Love] was black and should have assisted her in the course of business." *Id.* at 11. She adds that because the caller "had a slight accent," Ms. Coleman "either disregarded the request for escalation because [Ms. Love] was black and should have assisted her in the course of business which is unclear to me who's [sic] course of business or guidelines she was referring to at that point," and Ms. Coleman's "negligence and lack of concern is a sign of racial prejudice." *Id.* As for similarly situated individuals, Ms. Love makes the following assertions in her response brief:

> Jamie Coleman A white middle aged female was similary situated in Customer Service department. She continued her employment with Kaiser and according to her own testimony was acutually promoted to Operations supervisor. adverse employment action while similarly situated individuals outside her protected class were treated more favorably . . . . Was a white person making the same decision treated differenctly. Jamie Coleman. A profile she was selected because her profile would do better than mine a black female. This is social engineering that despite everything, Jamie Coleman was going to work better. The factor into this was socially engineered racial profiling and de facto is discriminatory. The defenadants deal in probabilities. The probablility that employee solicitation will gain them gainful employment. That hiring a middle age white female will gain them gainful emploment.

Dkt. No. 40 at 6. Even if these allegations were in her complaint (they are not), they do not explain how a similarly situated individual outside her protected class was treated differently.

These conclusory assertions are insufficient to show that circumstances surrounding her termination give rise to an inference of discrimination. *See, e.g.*, *Austin v. City of Oakland*, No.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 9

1  17-CV-03284-YGR, 2018 WL 4353030, at *4 (N.D. Cal. Sept. 12, 2018) (plaintiff's "allegations
2  that he was 'singled out ... and treated less favorably,' supplied without any supporting factual
3  allegations, fails to establish a reasonable inference of liability stronger than a mere possibility");
4  *Heyer v. Governing Bd. of Mount Diablo Unified Sch. Dist.*, No. C-10-4525 MMC, 2011 WL
5  724736, at *2 (N.D. Cal. Feb. 22, 2011) (allegations that plaintiff had been subjected to
6  "[u]nwarranted, unrelenting over and close scrutiny," "[c]ontinuous harassment," "[c]ontinuous
7  undermining of ability to perform duties," "[f]alse negative performance evaluation," harassment
8  "on account of his race, and color and age," and that he "was denied transfer or reassignment as
9  Vice–Principal because of his race and color" was insufficient to raise a right of relief above the
10 speculative level), *aff'd*, 521 F. App'x 599 (9th Cir. 2013). Ms. Love's proposed amendments to
11 add that Ms. Coleman "is a middle aged white female," Dkt. No. 37-1 at 7, and to correct
12 "couchings" to "coachings," *id.* at 10, would not change this result.

13      Ms. Love has also not stated a claim for sex discrimination. She alleges that someone—
14 presumably Dr. Dunn when he sent the cancer screening reminders—"us[ed] gender and or race
15 as a determination of care," Dkt. No. 33 at 7, but she provides no nexus between her healthcare
16 and her employment. Ms. Love also contends that "women are treated to unequal pay in the work
17 place," *id.* at 11, but that conclusory allegation does not allow the court to plausibly infer that she
18 personally was subjected to sex discrimination. In response to the motion to dismiss, Ms. Love
19 contends that Ms. Coleman "used gender and color to dispose of" of an unpleasant situation—
20 presumably the contentious call—so she would not have to deal with it. Dkt. No. 44 at 6. Even if
21 Ms. Love were permitted to amend her complaint via a response brief (she is not), that conclusory
22 allegation does not state a claim either. Again, the amendments in Ms. Love's proposed third
23 amended complaint would not change this outcome.

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 10

Therefore, the Court grants Kaiser's motion to dismiss Ms. Love's Title VII claim for race and sex discrimination.

### 2. Ms. Love Has Not Stated a Disability Discrimination Claim

To prevail on a disability discrimination claim premised on an alleged wrongful termination, a plaintiff must establish that (1) she is a person with a disability within the meaning of the statute; (2) she is qualified—i.e., she is able to perform the essential function of the job with or without reasonable accommodation; and (3) she was discharged because of the disability. *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015). An individual is disabled under the first prong if she has a physical or mental impairment that substantially limits one or more of her major life activities; she has a record of such an impairment; or she is regarded as having such an impairment. *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) (citing 42 U.S.C. § 12102); *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1225 (9th Cir. 2022); 42 U.S.C. § 12102(1)(A). That definition does not require "a showing of long-term effects." *Shields*, 32 F.4th at 1225. The ADA provides a nonexhaustive list of "major life activities" including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

In her amended complaint, Ms. Love identifies her disabilities as "chronic illness" and "mental health." Dkt. No. 33 at 4. She contends that Kaiser knew about her conditions because it "had access to [her] health profile[.]" *Id.* at 9. Even assuming this provides adequate specificity regarding an impairment of which Kaiser was aware, Ms. Love does not allege that either impairment "substantially limited" a "major life activity." 42 U.S.C. § 12102(1)(A). Following the ADA Amendments Act of 2008 ("ADAAA"), "[t]he term 'substantially limits' shall be construed broadly" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Still, a

plaintiff must plead the elements of the definition. *See, e.g.*, *Shields*, 32 F.4th at 1225–27. Here, Ms. Love has not pleaded that she is substantially limited in any major life activity. Her statement that she was too sick to work on two days does not allege that she was substantially limited in her ability to work as compared to most people in the general population. Dkt. No. 33 at 9; *see, e.g.*, *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1112 (9th Cir. 2014) (stating that, under post-ADAAA law, ADA plaintiffs must show that they were substantially limited in their ability to work compared to "most people in the general population." (quoting 29 C.F.R. § 1630.2(j)(1)(ii))). Ms. Love does not allege facts to show that she is a person with a disability, and she has thus failed to state a claim for disability discrimination. *See Vopnford v. Wellcare Health Plans*, No. C16-1835-JLR, 2017 WL 3424964, at *11 (W.D. Wash. Aug. 8, 2017) (dismissing ADA claim for failure to allege a disability or state a claim).

      Moreover, even if Ms. Love had alleged facts sufficient to show that she has a disability, she has not stated a claim that Kaiser failed to accommodate her. To prevail on a failure to accommodate claim under the ADA, a plaintiff must show, among other things, that the employer had notice of the disability and failed to reasonably accommodate the employee. *See McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014). Ms. Love contends that Kaiser failed to accommodate her because it "refused to send boxes" to facilitate the return of her computer equipment after her employment ended. Dkt. No. 33 at 9. But an employer is not required to provide the precise accommodation an employee requests; it "need only provide enough accommodation to enable the employee to perform the essential functions of h[er] job." *McDaniels*, 57 F. Supp. 3d at 1314. Here, Ms. Love does not allege that she was unable to perform the essential functions of her job. Even assuming that returning the equipment was an essential function, she returned the equipment approximately two weeks after her employment ended without incident. Dkt. No. 33 at 9. Accordingly, Ms. Love has not stated a claim for failure to

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 12

accommodate. Furthermore, the amendments in Ms. Love's proposed third amended complaint would not change this outcome.

        3.    <u>Ms. Love Has Not Stated a Hostile Work Environment Claim</u>

To prevail on a hostile work environment claim, plaintiffs must prove that (1) they were subjected to verbal or physical conduct because of a protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was so severe or pervasive as to alter the conditions of employment and create an abusive environment. *See Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003). "To determine whether conduct was sufficiently severe or pervasive to violate Title VII, [courts] look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (quotation marks omitted). "In addition, the working environment must both subjectively and objectively be perceived as abusive." *Id.* (quotation marks and alteration omitted).[7]

Although Ms. Love alleges that Kaiser "disrupt[ed] the work environment with sexually motivated conduct," Dkt. No. 33 at 7, she does not provide any details in support of that assertion. She also contends that Kaiser failed to assist her "with abusive and racially abusive phone calls." *Id.* The one call described in the complaint, in which a caller screamed at Ms. Love about a payment issue, does not appear to have any connection to any of her personal characteristics. *Id.* at 8. The complaint also fails to provide any details about the allegations regarding "sexually

---

[7] Ms. Love argues that "[t]he [C]alifornia standard for Sexual Harassment should be applied[.]" Dkt. No. 44 at 7. However, Ms. Love is a Washington resident, Dkt. No. 33 at 13, and does not explain why California law should apply to her sexual harassment claim. *See, e.g.*, Cal. Gov't Code § 12923(a) ("The purpose of these laws is to provide all *Californians* with an equal opportunity to succeed in the workplace and should be applied accordingly by the courts.") (emphasis added); *see also id.* at § 12920 ("This part shall be deemed an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of this state.").

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 13

motivated conduct" in the work environment, "sexual situations" being a "determin[]ing factor for monetary compensation," or her supervisor's determination "that [she] should have given money to a representative based on 'their' sexual status to [a] member." *Id.* at 5, 7–8. Ms. Love's response does not clarify the nature of her allegations and instead vaguely alludes to a "safety" issue and being required to do "something else"—seemingly in relation to the contentious call—that was not in her job description. Dkt. No. 44 at 7–8. Even assuming that the facts in Ms. Love's second amended complaint are true, they do not show harassment based on a protected characteristic, or severe and pervasive conduct. Ms. Love's conclusory allegations are insufficient to state a hostile work environment claim and could not be salvaged by the changes in her proposed third amended complaint. That claim is accordingly dismissed.

    4. <u>Ms. Love Has Not Stated a Retaliation Claim</u>

Ms. Love alleges that Kaiser retaliated against her by ending her employment because she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on the same day she was fired. Dkt. No. 33 at 10. Both Title VII and the ADA prohibit employers from taking adverse action against an employee because they have complained about or opposed discrimination. 42 U.S.C. § 12203(a); 42 U.S.C. § 2000e-3(a). To state a retaliation claim under either statute, a plaintiff must show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003) (quoting *Brooks*, 229 F.3d at 928) (ADA); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006) (Title VII).

Here, even assuming Ms. Love filed an EEOC complaint and was discharged, she has not demonstrated a causal connection between those events because she was discharged *before* she complained. An adverse action that occurred after her complaint cannot plausibly be caused by the complaint.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 14

### 5. Ms. Love Has Not Stated an ADEA Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination, a plaintiff must allege that she (1) was at least forty years old; (2) was performing the job satisfactorily; (3) suffered an adverse employment action; and (4) the adverse action occurred "under circumstances otherwise giving rise to an inference of age discrimination." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012). The fourth element can be established either by direct evidence of indicating an employer's discriminatory conduct or through circumstantial evidence. *See id.* Although a plaintiff is not required to allege every fact necessary to establish a prima facie case of discrimination in the complaint, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002), the complaint must provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Kaiser argues that Ms. Love's age discrimination claim must be dismissed because although she is over 40 years old, the second amended complaint includes no other allegations related to her age. Dkt. No. 38 at 18–19. The Court agrees. The second amended complaint does not include any facts or non-conclusory allegations to support an age-related claim. And, as with her other claims, the amendments in Ms. Love's proposed third amended complaint would not change this outcome. The Court therefore dismisses Ms. Love's ADEA claim.

### 6. Ms. Love Has Not Stated a Claim under California Law or for Missed Breaks

Under the title "Basis for Jurisdiction," Ms. Love's complaint lists, in addition to the federal statutes discussed above, "California Civil Code." Dkt. No. 33 at 3. She also notes that her termination "came certified from California." *Id.* at 8. Beyond that, the second amended complaint

does not specify what California law, if any, Kaiser allegedly violated, or how it did so. Therefore, she has not stated a claim under California law.

Ms. Love also alleges that Kaiser "and its representatives/agents have intentionally violated [her] rights under federal and state law by denying [her] breaks[.]" Dkt. No. 33 at 7; *see also id.* at 8 (alleging that she "asked for [her] morning break in a ping to [her] supervisor Jamie Coleman in the teams chat. She told [her] no, [she] could not have a break that after hours of being on the phone; [she] could not go and relieve [her]self."); *see also* Dkt. No. 44 at 10 (alleging in response to the motion to dismiss that Kaiser did not follow the times it assigned her for breaks). Dismissal under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Ms. Love's missed breaks allegations do not identify which "federal or state law" Kaiser allegedly violated by denying her breaks. Because Ms. Love has not identified a cognizable legal theory supporting her claim for missed breaks, she has not stated a claim.[8]

## C.    The Court Will Not Grant Further Leave to Amend

A court's discretion to deny further leave to amend is "particularly broad where, as here, a plaintiff previously has been granted leave to amend." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999). Here, Ms. Love has submitted three complaints, and her second complaint had the benefit of a prior round of briefing on Kaiser's motion to dismiss, as well as the Court's order explaining why her initial complaint failed to state a claim. Despite this, Ms. Love's second and third complaints largely rehash the same facts as her initial complaint, add impertinent allegations, and introduce new claims based on deficient facts and conclusory assertions.

---

[8] Furthermore, as Kaiser notes, if Ms. Love is alleging a claim for missed breaks under Washington law, she has not alleged facts to support that claim. Dkt. No. 38 at 17–18 (citing Wash. Admin. Code § 296-126-092(4), (5)).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 16

Furthermore, Ms. Love does not seek leave to amend in her responses to Kaiser's motion to dismiss, nor does she indicate what additional facts she could plead to state a claim. For these reasons, the Court declines to allow further leave to amend. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (concluding that amendment would be futile where plaintiffs already filed an amended complaint containing the same defects as their original complaint and failed to state what additional facts they would plead if given leave to amend, or what additional discovery they would conduct to discover such facts).

### III.  CONCLUSION

For the foregoing reasons, Ms. Love's motion to file a third amended complaint, Dkt. No. 37, is DENIED without leave to amend. Kaiser's motion to dismiss the second amended complaint, Dkt. No. 38, with prejudice is GRANTED.

Dated this 7th day of May, 2024.

Lauren King
United States District Judge